FILED

2013 Apr-01  PM 04:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION NO.** |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | **JURY TRIAL DEMANDED** |
| WINFIELD RUBBER MANUFACTURING CO., INC. | ) | |
| | ) | |
| Defendant. | ) | |

## NATURE OF THE ACTION

This is an action brought under Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of retaliation, and to provide appropriate relief to Mark Holmes ("Holmes"), who was adversely affected by such practices.

As alleged with greater particularity in paragraphs six (6) through seventeen (17) below, the U.S. Equal Employment Opportunity Commission ("the Commission") alleges that Winfield Rubber Manufacturing Co., Inc. ("Defendant," or "Winfield Rubber") violated Title VII when it retaliated against Holmes because he opposed workplace sexual harassment of a subordinate employee and because he participated in a proceeding under Title VII.

## JURISDICTION AND VENUE

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.       The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Alabama.

## PARTIES

3.       Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII of the Civil Rights Act of 1964, and is expressly authorized to bring this action by Section 706(f)(1 ) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.       At all relevant times, the Defendant Employer has continuously been an Alabama corporation doing business in the State of Alabama and the City of Winfield, and has continuously had at least fifteen (15) employees.

5.       At all relevant times, Defendant Employer has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## STATEMENT OF CLAIMS

6.       More than thirty days prior to the institution of this lawsuit, Holmes filed a charge with the Commission alleging violations of Title VII by Defendant.  All conditions precedent to the institution of this lawsuit have been fulfilled.

7.       From approximately August 2010 through October 2010, Defendant engaged in unlawful employment practices at its Winfield, Alabama facility in violation of Section 704 of Title VII, 42 U.S.C. Section 2000e-3(a).  More specifically, the Commission avers the following:

a.  Holmes had been employed with Defendant since at least 2004 and, at the time of his

termination in October 2010, worked as a department manager;

b.  As department manager, Holmes had the power and authority to discipline employees up to and including termination, and had terminated employees in his years as a manager;

c.  On August 25, 2010, a female employee who worked on the Defendant's night shift reported being sexually harassed by a male co-worker during the course of their early morning work shift.  That report included these allegations:

   i.   the coworker attempted to grab the female employee's breasts;
   ii.  the coworker hit the female employee on her buttocks; and
   iii. as she stooped down to pick up an item, the coworker came up from behind her, and placed his foot beneath her buttocks and pushed it forward into her vaginal area.

d.  The male coworker's conduct was reported to be unwanted and offensive to the female.  In fact, she became so distraught, humiliated and fearful that she, accompanied by a co-worker, went to the police department and reported the assault.

8.      The following morning, the female employee reported the incident to Holmes, who concluded through interviews with two male witnesses, and the harasser, that the female employee had been sexually harassed.  After completing his investigation, Holmes decided that the appropriate discipline required termination of the harasser.

9.      There followed over the next several days a series of conversations where certain managers employed by Defendant attempted to persuade the female employee to withdraw her complaint or reach a settlement that would allow the harasser to keep his job. The female employee did not relent and did not drop her complaint.

10.      However, a meeting was held on August 31, 2010, attended by the Defendant's managers, the female employee and the alleged harasser.  At the end of the meeting, an

announcement was made by the principal manager that the alleged harasser would be rehired to work for Defendant.

11.    During this meeting, Holmes expressed disagreement with Defendant's attacks and insults directed at the female employee and expressed his opposition to making a decision to rehire the harasser.  Holmes subsequently met with the female employee off-site, apologized for the process of the meeting and told her that she had the right to contact EEOC if she desired.

12.    The female employee filed a charge of discrimination with the EEOC on September 8, 2010; the EEOC mailed the charge of discrimination to Defendant's facility address on September 21, 2010.

13.    During the several weeks after the August 21, 2010 meeting, Defendant's principal manager continually accosted Holmes about the harassment issue and insisted that Holmes should be happy about the company's decisions.

14.    During the last week of September, Defendant ordered Holmes to meet with its chief management officials.  The principal manager was holding a paper during the meeting and angrily demanded to know if Holmes knew about the female employee filing a complaint against the company.  The principal manager angrily demanded that Holmes persuade the female employee not to proceed with her complaint of discrimination and commit to not providing information favorable to the female employee.  Holmes refused to do either.

15.    Holmes was then sent home for a week with pay and told to decide if he would support the female employee or the company in the discrimination claim.  After the suspension, Holmes reported that he would tell the truth.

16.    Defendant's principal manager became incensed, jumped up, pointed his finger in Holmes' face, and terminated Holmes' employment, telling Holmes to get his "shit" and "get the

hell out…."

17.    After the August meeting, Defendant moved the female employee to the day shift, and later instructed that no females work the night shift; Defendant terminated the employment of the female employee several months later.

18.    The effect of the practices complained of above in paragraphs six (6) through seventeen (17) has been to deprive Holmes of equal employment opportunity and adversely affect his status as an employee in retaliation for his opposing sexual harassment and participating in a proceeding under Title VII.

19.    The unlawful employment practices complained of above in paragraphs six (6) through seventeen (17) were intentional.

20.    The unlawful employment practices complained of above in paragraphs six (6) through seventeen (17) were done with malice or with reckless indifference to the federally protected rights of Holmes.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.   Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, attorneys, and all persons in active concert or participation with it, from maintaining a sexually-hostile work environment, and engaging in retaliatory conduct prohibited by Title VII.

B.   Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for all employees, and prohibit and penalize retaliation prohibited by Title VII, and which eradicate the effects of its past and present unlawful employment practices.

C.  Order Defendant to make whole Holmes by providing backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D.  Order Defendant to make whole Holmes by providing compensation for past and future pecuniary losses resulting from the unlawful practices complained of above in amounts to be determined at trial.

E.  Order Defendant to make whole Holmes by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self esteem, and loss of civil rights, all in amounts to be determined at trial.

F.  Order Defendant to pay Holmes punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

G.  Grant such further relief as the Court deems necessary and proper in the public interest.

H.  Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully Submitted,

s/ C. Emanuel Smith
C. EMANUEL SMITH
Regional Attorney
Emanuel.Smith@eeoc.gov
MS Bar # 7473

JULIE BEAN
Supervisory Trial Attorney
Julie.Bean@eeoc.gov
DC Bar # 433292

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Birmingham District Office
Ridge Park Place, Suite 2000
1130 22nd Street South
Birmingham, AL 35205
Telephone: (205) 212-2067
Facsimile:  (205) 212-2041